**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**HENRY J. KOLB,**

                          **Plaintiff,**                **02-CV-0117A(Sr)**

**v.**

**JOHN CAMILLERI, et al.,**

                          **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #34.

Currently before the Court is defendants' motion *in limine.*  Dkt. #72. Specifically, defendants seek to exclude any testimony, evidence or argument suggesting that:

    (1)   plaintiff was forced to retire or constructively discharged as a result of defendants' alleged retaliation;

    (2)   plaintiff suffered lost wages as a result of his assignment to manhole inspections; and

    (3)   plaintiff suffered physical or emotional damages.

Dkt. #73, p.2.  For the following reasons, defendants' motion is granted in part and denied in part.

**Constructive Discharge**

Defendant argues that plaintiff should not be allowed to change the theory of his case to include a claim of constructive discharge in an attempt to circumvent the Court's determination that plaintiff could not demonstrate that he was misinformed as to the prospect of continued employment with the Town in retaliation for his picketing. Dkt. #73, p.4.

Plaintiff responds that his amended complaint affords defendants sufficient notice of his claim of ongoing harassment in retaliation for his picketing and notes that he informed defendants during the course of discovery that he chose retirement as an alternative to "an atmosphere wrought with retaliatory and harassing behavior against me." Dkt. #75, pp.4-5.  As a result, he argues that he should be permitted to claim the lost wages resulting from his early retirement as damages.  Dkt. #75, p.4.

To claim the lost wages resulting from his early retirement as damages, plaintiff must be able to demonstrate that his decision to retire was involuntary, *i.e.*, that he was constructively discharged.  "Constructive discharge occurs when an employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Capital Mgmt Int'l*, 481 F.3d 86, 88 (2d Cir. 2007) (internal quotation omitted). "Working conditions are intolerable if they are so difficult or unpleasant that a

reasonable person in the employee's shoes would have felt compelled to resign."

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

The record before the Court on the previous motion for summary judgment does not contain evidence from which a rational trier of fact could conclude that a reasonable person in plaintiff's shoes would have felt compelled to resign. Plaintiff testified that during the course of his picketing between October 23, 2001 and November 13, 2001, the Director of Labor Relations for the Town of Tonawanda, Norman J. Stocker suggested that plaintiff should be seeing someone, a comment plaintiff interpreted as suggesting plaintiff would not be picketing unless he was suffering from a mental or other illness.  Dkt. #43, ¶ 27.  On November 13, 2001, plaintiff was reassigned from his duties of construction inspection to manhole inspections, which was more physically demanding and required less skill than a construction inspection.  Dkt. #37, ¶ 35; Dkt. #43, ¶ 36.  Plaintiff also claims that on December 21, 2001, he was greeted rudely and verbally attacked by Mr. Stocker at a health care arbitration he was attending in his capacity as Vice Chairman of the Grievance Committee.  Dkt. #44-3, ¶ 55.

More than one year later, on January 23, 2002, plaintiff alleges that he attended a meeting with Mr. Stocker, Mr. Rowland, Mr. Scherer, Mr. Camilleri, Mr. Moffitt and Ms. Jividen at which he was questioned about his address and compliance with the Town's residency law;  acceptance of a jacket from a contractor; and payroll records.  Dkt. #44-3, ¶ 60-61.  Mr. Stocker and Mr. Scherer affirm that Mr. Stocker

asked plaintiff to provide an updated address to personnel but plaintiff refused and the matter was not pursued further; Mr. Stocker asked plaintiff about time sheets which had been completed by someone else, at which point Mr. Scherer advised that he routinely completed time sheets for the Construction Inspectors; and that after Mr. Stocker inquired about a jacket with a contractor logo which plaintiff was wearing, Mr. Scherer advised that he and plaintiff had each received a jacket from the contractor as gifts, prompting Mr. Stocker to advise them that he felt that was inappropriate and directed them not to wear the jackets at work.  Dkt. ##60 & 63.  In addition, plaintiff generally complains that his work computer and Town vehicle were searched and his whereabouts scrutinized by his superiors.  Dkt. #44-3, ¶¶ 57-59 & 62-63; Dkt. #49, pp.5-6.

These allegations do not rise to the level of constructive discharge.  "A constructive discharge generally cannot be established . . . through evidence that an employee was dissatisfied with the nature of his assignments."  *Stetson v. NYNEX*, 995 F.2d 355, 360 (2d Cir. 1993).  "Nor is it sufficient that the employee feels that the quality of his work has been unfairly criticized" or that the employer has "engaged in unduly close monitoring of the plaintiff's work."  *Id.*   Moreover, "an employer is entitled to insist on as high a standard of work performance as it deems appropriate, and the fact that an employee develops stress-related ill health from the demands of his voluntarily undertaken position or from criticisms of his performance, and as a result determines that health considerations mandate his resignation does not normally amount to a

constructive discharge by the employer." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993).

The Court notes that plaintiff's own testimony contradicts any suggestion that plaintiff would have felt compelled to leave his employment with the Town of Tonawanda absent the retirement incentive.  For example, in his deposition, plaintiff testified that he was going to leave

> If the town adopted the incentive.  I just couldn't leave unless the town adopted it.

Dkt. #45-2, p.15.  Similarly, plaintiff's affidavit admits that he informed his co-workers that he "planned on leaving to go to work for the Village of Kenmore, if the town adopted the incentive" and his statement of facts posits that plaintiff's "decision to retire was motivated by the incentive" and that he "chose retirement in lieu of layoff."  Dkt. #43, ¶ ¶ 53 & 55; Dkt. #44-3, ¶ 70.  Moreover, plaintiff's response to defendants' interrogatories indicates that he informed Ms. Jividen that "the only reason he took the retirement option was because of the information he was given about the Construction Inspectors."  Dkt. #49, ¶ 13.  Thus, it is clear that plaintiff did not view his working conditions as so intolerable as to compel his resignation in the absence of the retirement incentive.

As no rational fact finder could find that a reasonable person in plaintiff's shoes would have felt compelled to resign as a result of the conditions alleged by plaintiff, amendment of plaintiff's complaint to include a claim of constructive discharge

would be futile.  Accordingly, defendants' motion *in limine* is granted to the extent it seeks to preclude plaintiff from presenting evidence that he was constructively discharged or sustained damages as a result of his retirement.

## Lost Wages

Defendants seek to preclude plaintiff from introducing evidence concerning loss of overtime following his reassignment to manhole inspections because that issue was resolved by settlement of plaintiff's grievance.  Dkt. #73, p.17.

Plaintiff responds that he will not seek to recover damages for lost overtime.   Dkt. #75, p.2.

In accordance with plaintiff's representation, this aspect of defendants' motion in *limine* is denied as moot.

## Physical or Emotional Damages

Defendants seek to preclude plaintiff from seeking damages for physical or emotional harm because there is no evidence that plaintiff sustained any such injury as a result of defendants' alleged retaliation.  Dkt. #73, pp.18-21.

Plaintiff responds that he is entitled to ask a jury for such damages based solely upon plaintiff's testimony.  Dkt. #75, p.9.  Plaintiff notes that during the course of

discovery, he informed defendants that he was "tormented," had "lost his dignity," was "upset" and subjected to "added pressure" as a result of defendants' actions.  Dkt. #75, p.10.  Plaintiff also claims that his reassignment to manhole inspections caused carpal tunnel syndrome and exacerbated his back condition and that these injuries should be compensable.  Dkt. #75, p.10.

Plaintiff's will not be precluded from seeking damages for emotional distress and physical injury merely because evidence of such damages will come from plaintiff himself.  *See Kinneary v. City of N.Y.,* 536 F. Supp.2d 326, 330-32 (S.D.N.Y. 2008) (plaintiff's testimony of embarrassment and disappointment without medical evidence of physical manifestations or medical or psychological treatment warranted garden variety non-economic damages award);  *Rainone v. Potter*, 388 F. Supp.2d 120 (E.D.N.Y. 2005) (describing and collecting cases of garden variety awards of $5,000 to $35,00 for emotional distress typically rendered in cases where the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his distress in vague or conclusory terms), *quoting* Michelle Cucuzza, *Evaluating Emotional Distress Damage Awards to Promote Settlement of Employment Discrimination Claims in the Second Circuit*, 65 BROOK. L. REV. 393, 427-28 (1999).  Thus, plaintiff's testimony regarding the physical and emotional impact of defendants' alleged retaliation for his picketing should be assessed by a jury.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion *in limine* (Dkt. #72), is granted in part and denied in part.

**SO ORDERED.**

DATED:      Buffalo, New York
            December 8, 2008

     **s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**